Good morning. May it please the Court, Robin Packle with the Federal Public Defender representing Defendant Appellant Anthony Meyers, and I'd like to reserve two minutes for rebuttal. Unless the Court prefers otherwise, I'd like to start with our jurisdictional issue. That's where I wanted to start. Thank you. The government's argument is that the district court did not have jurisdiction to decide Mr. Meyers' motion for reduction of his sentence. And it's pretty plain to me from the facts that the district court did. Mr. Meyers filed his motion in the district court, Northern District of California, that had imposed the 151-month sentence on him. It was on the same docket that that sentence was imposed, that he filed his motion. It was the same judge who sentenced him, who decided his motion for compassionate release or for reduction of his sentence. And I think this is where the real sticking point is. At the time he filed his motion, in January of 2024, and at the time the district court decided it in September of 2024, he was within the maximum term of that 151-month sentence that that district court had imposed. And I think that settles, as a factual matter, the question of jurisdiction. Well, but now we're sitting here well after he's had that maximum sentence, so what relief could we order? So, I think that question, and the district court, sorry, just to note that the government did not, in its opposition, argue mootness, which is, I think, what we're really talking about here. Right. I think you're right. This is a mootness question, an Article III mootness question. And I think this court's opinion in YPEZ, Y-E-P-E-Z, gives the instructions on how to do a compassionate release motion. And what YPEZ says, first of all, is that it's the party arguing for mootness, the government in this case, that bears a heavy burden, and that the standard is, could the court grant any effective release? Well, I agree with the second part, and that's my concern. And part of it's driven by the fact that I just don't understand how compassionate release works in practice. Is the sentence actually changed, or is the sentence remain and they're just released early? I think, so the language of the statute, and we're talking about 18 U.S.C. specifically. It says modify the terms of the sentence. So 18 U.S.C. 3582, C1A1 says reduce. It's reduce the term of imprisonment, is the language of the statute. Wait, oh yeah, may reduce. It says may not modify a term of imprisonment. The court may reduce the term of imprisonment. And I guess I'm not clear what the term of imprisonment is. Does the order come down, or do you say, no, you still have a 60-month sentence, but we're just going to let you out early? So what the court's authority to do is to reduce its term of imprisonment. So in Mr. Myers' motion before the district court about challenging or asking it to reduce, and that was a relief he requested, is a reduction of his term of imprisonment. The court, the district court in the Northern District of California that had imposed that sentence could say, yes, we grant your motion. We're going to reduce your term of imprisonment to let's say 100 months. I'm probably going to get myself into some difficult math here. But then once the court issues that order on the motion for a compassionate release, it is up to the Bureau of Prisons to figure out how to carry out that order, how to administer the sentence. And in this case, because Mr. Myers was serving a consecutive sentence from a different district court, the District Court of Virginia, and he had not ever been released from his total term of imprisonment, he still remains there today, it becomes the Bureau of Prisons' responsibility to figure out what to do once the district court... Your point is it may not be set in stone, but there's at least enough discretion that it could provide some relief. Exactly. What could BOP do? So what BOP could do, and I think the Seventh Circuit's opinion in Von Vader... The problem with the Seventh Circuit opinion, the holding is great. I can't make it, with all due respect to our visiting colleague's colleague, it doesn't really help in the analysis. So I think, I agree that it's not a complete model of clarity, but I think what they said and I think the dissent in the Second Circuit opinion and Martin, which dealt with a different compassion relief situation. That was a statutory question, right? Yes, that was a different... But talking about the relief, talking about mootness, once the district court issues the order, the district court sets the term of imprisonment, reduces the term of imprisonment, the Bureau of Prisons, and this is also in 18 U.S.C. 3585B, the Bureau of Prisons can, if you want to think of it as moving up the date of the consecutive sentence or crediting towards the consecutive sentence... And then he would be released earlier. ...what is now sort of the over-served time on the now reduced sentence. So you think he could get out earlier. So the result is a reduction of his term of imprisonment. Counsel, does the mootness answer depend at all on the specific mechanism of the reduction? Suppose you had somebody with just, let's say, a series of three consecutive sentences and one gets knocked out. One of the convictions is set aside. Then BOP goes back in and figures... Well, the person probably gets resentenced, but you go figure it out, right? That's correct. And I believe that there's a dividing line that's clear, statutorily at least, between imposing sentences, reducing sentences, which is the responsibility of the court, and administering sentences for, or aggregating sentences for administrative purposes. And I'll just note that Von Vader, while it may be terse, is eminently practical. Absolutely. I have no substantive issue with Von Vader. Okay, so you get a... So say that we reverse the district court issue's order saying compassionate release should have been granted. You then take that judgment to BOP, and then they... Figure it out. ...will administratively figure it out. And that's all you ask? Okay. That is exactly. We are asking the district court in the Northern District of California to reduce... And if BOP does nothing... ...its own term... What if the BOP did nothing with that judgment, that new judgment? Then you would sue on that? Then I, yeah, I think we'd have a, yeah. He'd have to exhaust his administrative remedies, Mr. Myers, in terms of that, and then we might be back here. But the easiest way out of this, it seems, and we'll hear from the government, is to say, look, we don't know exactly how this works, but there's at least some avenue of relief, and that's enough to satisfy the mootness. That's correct. It's a high, pretty high bar, I think, YEPES sets in this very context for finding mootness, and I think the government has not satisfied it. I think I need to save my time for rebuttal. Thank you. Thank you. May it please the Court, Elizabeth Berenger for the United States. And this Court's decision in Bryant resolves the merits, so what is remaining is the jurisdictional issue. And one is, can... I wondered whether Bryant also spoke, unintentionally, perhaps, to the mootness question, because in Bryant, we said,  compassionate release is not sentencing or resentencing. The focus of compassionate release proceedings is not on what sentence is most appropriate, it's on whether new circumstances warrant discretionary relief. Does that suggest that this case is moot, because it's not... I mean, is it that it's discretionary relief that isn't actually formalized, in a way? Well, I disagree that 3582 doesn't give a new term of imprisonment. Well, then doesn't that answer the question? So, it is a new term of imprisonment, but I'd like to separate this mootness issue. There's sort of two swirling mootness issues that are at issue here, and one is the first, which the government argued all along, that at the time the defendant filed his motion, and we can talk about the factual issue in a second, but assuming the sentence had run out, at the time he filed his motion in the Northern District, California, the district court had no authority to reduce a sentence that had already been served. And we know this from the text. So, that's your statutory mootness question. Statutory, sorry. But we're mostly focused on Article III mootness question. But I think there's two Article III mootness issues here. And the first one is whether there is an injury or some sort of, you know, collateral consequence in the first place. Now, look, that's what the court's deciding, the district court. She had to decide, is there an injury, there's no sentence, so is there a collateral consequence? So, whether the sentence being moved up or down is a collateral consequence, the government says no, because a collateral consequence is something that arises from the sentence, and a later in time event is not a collateral consequence. That is a non-collateral consequence. Well, can you address the Article III mootness question for now? Because now, could we order any relief below? Well, the question of redressability mootness is maybe perhaps what this court is confronting. And our position is that the sentence has expired. And so, there is nothing that this district court can do on its sentence now that it has run. So, if we were saying the district court got it wrong, that compassionate relief should have been ordered and that his sentence should have been reduced, and there's a judgment or order that says that, couldn't that be presented to BOP to then do something with the remaining sentence? That's concerning redressability mootness. And maybe that is dealt with in YPES, that's dealt with in Chapin, but I'm talking about Martin and Spencer v. Chemnutt. I know, I'm talking about YPES right now. Is there effective relief that could happen right now? I guess I would say that the case law is unclear on that point, as far as the redressability mootness. But the mootness, it's a different prong of Article 3. But what's your position on it? Our position on the mootness is that... On redressability. Yeah. Could we issue an order? Maybe we won't because we read Bryant the way you read Bryant. But could we order and say, you got it wrong on compassionate release and that would have some actual practical effect? The problem is, is that the district court did not have authority in the first place. Let's just assume all that. Okay. Because we want to know if we have authority now, if it's moot now as an Article 3 matter on redressability. I would be hesitant, because this issue has not been briefed, to take a firm stand and I haven't been really authorized to entrench the government's position. You've read the Seventh Circuit opinion. The Seventh Circuit opinion addresses the type of the Seventh Circuit. So the Seventh Circuit decision is not inconsistent with the government's position. Oh, so it said there is redressability. It didn't necessarily say that. It said it didn't hold that C1A authorizes the court to retroactively do it. So it didn't provide relief. It just said, and it didn't delve into it very deeply, it just said that it was a merits question and not a jurisdictional question. So I don't think that Von Vader... I don't disagree that the analysis isn't, you know, entirely clear, but it had to have said there. I mean, the implicit holding is that there was, that it was redressable because it would have an effect on the second sentence.  You don't disagree with that? I don't take a position on that issue because we have not briefed that.  Our position is that... Well, at the very least, then you're suggesting the government's not meeting its burden of proving mootness. Well, in the mootness issue, as far as the Martin and Spencer Van Kemp, that's the defendant's burden. There's a great line in Spencer versus Kemna, the burden of the party who seeks the exercise of jurisdiction in his favor has to allege the facts. Okay. And so his burden was to establish that he had an injury or collateral consequence at the time that he filed his motion. And that is the mootness that Martin is looking to.  Is that injury or collateral consequence. So, um... As far as whether a court can retroactively modify a sentence that has already been served, um... I thought that was the Martin question. Am I... Yeah. That is the Martin question. And it's not only the Martin question, it's five circuits that have agreed and no circuit has decided otherwise in the C-1B context, which is very similar to the C-1A context. But why are they right? I mean... They don't... Yes. Go ahead. Well, they're right for several reasons. Based on the text, based on the history of the statute, and based on policy reasons. And the first is the text. If we look at C-1A, and I'm taking this analysis from Fowler, our Ninth Circuit decision, the combination of may reduce the term of imprisonment with the parenthetical that... and may impose a term of supervised release that does not exceed the unserved portion, that presupposes that there is an unserved portion. And that's from Fowler. It's consistent with the view that there is an unserved... I don't know if textually we get there that that means that there has to be and may impose, you know... I mean, it presupposes, at least. That's what Fowler heard. I mean, it presupposes that there is a possibility of an unserved... Yeah, that's true. But it doesn't mandate that there be an unserved... It certainly isn't 100% clear-cut, but it definitely indicates that the government's reading is correct here. Every court that has interpreted this in this 35A12C1A, B context has agreed that the defendant... or that the court cannot modify an already served sentence. The history... Not Judge Sack, though. Is that the dissenter? Yeah, that's it. I mean, every court may have, but not every judge has. Yes, he's alone in that, or he or she, I'm not sure. And then, as far as the history of the statute, as this court recognized in Fowler, that nothing changed in 35A82C1A by the First Step Amendment other than it allowed prisoner motions. So it wouldn't make sense for Congress to authorize a statute for BOP to file motions for defendants who are no longer serving, which is the case in most of the cases. So what do you do with C1A2 where that says that, you know, for the offense or offenses for which the defendant is currently in prison? Yes. So it seems like 2 has a limitation of being currently in prison where, you know, 1 just doesn't have such a limitation. I agree with that, but C1A applies to both of those provisions with the parenthetical that talks about the unserved portion. Yeah, the parenthetical is pretty weak. Well, let me give you some policy reasons, because that's another really good reason in addition to the precedent... I don't like policy reasons. ...in addition to the structure and the history is that... I don't like the policy reasons. ...it doesn't make sense from a policy... Well, can you just address that textual problem? If subsection 2 says currently in prison and subsection 1 doesn't, isn't that, you know, the practical implication is Congress didn't require under 1 the defendant be currently in prison? I don't know it should necessarily be read that way because it's addressing a different type of prisoner, a prisoner that's 70 years of age and has served 30 years in prison for the offense for which he's currently in prison. I think they're sort of addressing lifetime prisoners and they want to talk about, like, if he served, you know, 50 years before his 5-year drug sentence, we want to talk about the 30 years that he served on this sentence. So I don't think they're necessarily inconsistent with reading it the way that the government has said. And the court would be alone in reading it that way. It's a pretty big statutory, like, canon that if it says it one place, you know, and it doesn't in the other place, that Congress meant what it said and it only applies to that one place. Well, then you also have to consider the parenthetical in C1A which applies to both provisions in talking about this unsuitable sentence. So you're saying this textual argument is that parenthetical?  And then policy reasons. And as this court, a skew is a great decision for this, the district court and the grand, you can't reduce a sentence below zero. What courts are doing when they're reducing a sentence based on a consecutive sentence is they're allowing a court to indirectly interfere with another court's sentence. It's allowing forum shopping as the case here, despite the defendant, this is case, 41 seconds left, despite the opportunity for the defendant here to file in both places, he has never sought to file a motion in the Western District of Virginia. Never, not one time. In all these years, he's filed three in the Northern District of California. Yeah, but he didn't know that the Bryant case was coming out. Maybe now he'd like to switch. Perhaps. And also just the principles of comedy to not interfere with other courts' sentencing decisions. I don't get that part. Why would it interfere with the West Virginia sentence if we said that the Northern District of California needed to be reduced? So there would be no point to reducing an already served sentence in this case. If it's already served, it's already served, there'd be no point other than to indirectly interfere with a consecutive sentence. What would be the point of reducing the sentence? It doesn't make any sense. Yeah, there's consequences from it. Not for 151 versus 149. But I forget, he said it's five years in the West Virginia. That doesn't, if he still has to serve five years for the West Virginia conviction, right? Even if we reduce... Right, but he'll get credited for his time, is what he's wanting. He's wanting that sentence to start earlier. Yeah, but he's still going to serve five. I just don't understand how we're affecting the West Virginia. Because it's no longer a consecutive sentence. It's turning it into a concurrent sentence. It's still a consecutive sentence. If you're moving the start date up, I just respectfully disagree with that. If you're moving a start date up, you are interfering with the length of sentence that sentence...  I don't get that argument. Thank you. You've got a lot of other good arguments, though. On the jurisdiction issue, very quickly, I'd just like to point out, the courts, I think, already identified some of the contrasting language         in other sentence reduction provisions, compassionate release provisions. But 3582C2 and 1B1.10 of the sentencing guidelines do provide that the reduced term of imprisonment may not be less than what the defendant already served. That is absent from Guidelines Section 1B1.13, which is the one that governs our compassionate release. So, moving on, you probably want to hear what I have to say about Bryant. First of all, I think... Well, I'm sorry, before you get there real quickly, do you agree that this court cannot modify the West Virginia court under... We are not asking this court or the district court in the Northern District of California to modify the Virginia... Well, didn't you make an argument about why the West Virginia conviction should have been reduced? I think that could be construed in terms of the facts about that conviction and his sentence. And it actually was tied to the Northern District of California sentence because it was because he was convicted of a crime of violence, this fake stash house robbery that he ended up in the highest, almost highest tier of USPs that were the violent environment  It's a discretionary factor in dealing with the Northern District of California conviction not the West Virginia. So, I think the California court properly could have considered those facts about what happened subsequent to its sentence in deciding whether to reduce its sentence. Okay, that makes sense. Thank you. So, about Bryant, first of all, we asked the district court... Sorry, we asked this court to remand to the district court to make... consider Bryant in the facts of this case. I mean, district courts are properly... I mean, why? What needs to be decided? Well, Bryant addressed youth and it addressed disparity with co-defendants. That was not what Mr. But Bryant, I mean, I read Bryant to say more than just youth. It's anything that comes up after the fact. So, I think that is a broad reading of Bryant. I think it is proper to remand to the district court to consider the facts that were presented to that court in this case in light of Bryant. I believe a petition for rehearing on Bonk is going to be filed tomorrow so Bryant is not yet filed. But I think that the courts make it clear, the Supreme Court,  it is the district court that properly should be given the authority to consider, especially in the compassionate release case, especially when it was the district court that imposed that sentence. And I do note that a number of other courts, Illinois, Florida, have granted compassionate release under guidelines provision B-5, the similar in gravity, in similar circumstances, the Stash House robbery where the defendant was a relatively minor participant. There are no further questions. I ask the court to remand. Thank you. Thank you to both counsel. You were very helpful in helping us understand the case and the case is now submitted.
judges: Hamilton, NELSON, BUMATAY